320-0027-WC Jason Dallefield, appellant versus the Workers' Compensation Commission, five-star fitness clubs at River City, Incorporated, Appalachia. Okay, before we begin today, I'd like to inform the council that Justice Hudson, due to a prior commitment, is not able to be with us presently, but that he has full benefit of your written briefs, and he will have full benefit of both the audio and likely as well now the video. And he's a fully participating member of this panel of this court on your case. Okay, that's being understood. Ms. Sohail, you may proceed. Good afternoon, Your Honors. Hania Sohail. I represent the appellant Jason Dallefield in this matter. May it please the court, Your Honor, I would request five minutes of rebuttal time. You're entitled to five minutes to reply, yes. Thank you, Your Honor. Your Honor, in this case, we presented two and raised two issues on appeal. The first issue is whether petitioner's condition of ill-being that was his condition to his right knee was causally related to the accident of August 29, 2009. We do believe that Illinois Workers Compensation Commission in reversing the opinion of the arbitrator was against manifest rate of the evidence. The second issue that we raised on appeal is the issue that before accident, the petitioner sustained while working for clubs at River City, whether the commission decision on that, that those accidents were not compensable is against the manifest rate of the evidence. I will like to take most of my time, majority of the time, in arguing the first issue as that is the main issue that has been raised in my brief and I would like to raise today. If time permits, then I will proceed forward with the second issue. Here are the facts. Petitioner at the time of the accident was employed at a fitness club. This fitness club was Five Star Fitness. The club was owned by three different owners. Robert Ressel was one of the owners that owned the club along with the two other co-owners. Petitioner started working there. He knew the supervisor there. Supervisor was a friend to him. His name was Brian Kelly. He started working there sometime in July of 2009. He was working as a sales consultant. He was in charge of selling memberships. At the time of the trial, petitioner testified that he was involved in a specific accident on August 29th of 2009 and the accident happened while he was, they were doing some renovations. So while he was moving a treadmill with the help of his supervisor, Brian Kelly, there was a, some member had a plastic water bottle that kind of, you know, was thrown on the floor and he tried to get rid of it and he tried to use his feet to knock the water bottle and as he did that, he testified that his foot went underneath him and he went into a deep squatting position as a result of which ended up twisting his right knee. Now this incident that I just described to you was witnessed by petitioner's immediate supervisor who did not testify at the time of the trial. After that, patient testified that the next day the supervisor took him to Now physician's immediate care is kind of a place that an employee goes to if instructed by the employer as a result of a work-related accident. If you look at the medical records of physician immediate care, you will note that the handwritten notes do indicate that the responsible party for paying this visit is the employer which was Five Star Fitness. They do note that he was employed at the time of the accident at Five Star Fitness. They noted a consistent history of accident of same manner that petitioner testified to was noted in the medical records. They performed a physical examination. The physical examination findings did note knee effusion or knee swelling. They did note the patient had a very significant intelligent gait. They noted diffused tenderness over the interior knee laterally and along the collateral ligament and they also noted the right quad muscle to be tender in nature. At physician's immediate care after noting the request the petitioner do a sanitary duty job which is a sit-down job and instructed petitioner to use crutches while he is ambulating. Not only did they do all of that, they wanted him to come back and schedule an appointment for September 1st of 2009. Petitioner testified that after this whole ordeal happened he talked to Brian Kelly and Brian Kelly indicated to him that he has discussed the matter with the three owners and they are not going to accept this case as a workers compensation case. He wasn't provided with a reason as to why they're not going to accept this case as a workers compensation case but that they were not going to accept that. He testified that at that time he had no idea what his workers compensation rights were. He did not have any way to pay for the doctor's appointments so what he ended up doing was he ended up not keeping his the appointment that was previously scheduled by the physician immediate care. He testified that after that he continued to work with crutches at the employer. He continued to work at the same duty level prescribed by the physician immediate care which was a sanitary duty and Brian Kelly was immediate supervisor continued to accommodate his sanitary duty restrictions. On his own after a while in approximately six months later in February of 2019 he left working for the clubs at River City or strike that you're on he left working for five fitness and went and seek another job at a place called SC2. Now at SC2 he was employed in a more of a supervisory safety regulation kind of role. He testified that once he had the job and as in his job capacity he was dealing with people with other work-related injuries he learned about his he learned about his workers compensation right he learned about workers compensation statute of limitation which essentially says that an employee is free to file a cause of action against the employer within three years of the accident. Now he learned his employee his right very close to the expiration of the statute of limitation which we are not disputing. When he learned his rights he hired an attorney with the assistance of his attorney he was able to see a doctor a doctor called Dr. Hoffman. He presented to Dr. Hoffman. Dr. Hoffman noted a consistent history of the accident. He did note that petitioner had experienced intermittent pain and swelling based on the history based on the fact that petitioner was still experiencing pain nearly about two years and 11 months after the accident he was referred to see or he was referred for an MRI. Petitioner did undergo the MRI. The MRI did show a bucket-handled tear of the lateral meniscus. He followed up with Dr. Hoffman posed the MRI and after that he was referred to see Dr. Rodi reviewed the MRI noted the consistent history of the accident noted consistently as to what has transpired from the day of the accident accident to the time the petitioner presented to Dr. Rodi including the fact that he was denied access to care including the fact that he was not aware of his rights and including the fact that he has continued to experience some symptomatology and then based on all of that Dr. Rodi recommended patient to undergo a knee surgery a right knee surgery in the form of a medial meniscus repair. While he was continuing to see Dr. Rodi and waiting for authorization for the surgical intervention he was involved in four subsequent accidents while he found a job at the clubs at River City. Now there is no dispute that the surgical recommendation predates his other four accidents that took place at clubs at River City. At the time of the trial we presented testimony or parties presented testimony of three different doctors and those doctors touched upon the main issue which is the causation issue in this case. The testimony was presented from Dr. Rodi who was petitioner's treating physician it was presented from Dr. Lieber who was an independent medical expert hired by Five Star Fitness. There was also testimony from Dr. Werma who was a doctor hired by the subsequent employer for the subsequent accidents clubs at River City. This is what Dr. Lieber testified to. Dr. Lieber did not believe that petitioner had a bucket handle medial meniscus tear. He did not believe that because he believed that if he would have had a bucket handle medial meniscus tear he would have had some sort of symptomatology from the time of the accident to the time of the MRI which was roughly about two years and 11 months post the accident. Dr. Lieber based on that did not believe that any condition that he would have or their his knee condition would be related to the initial accident. Now Dr. Lieber in his deposition did admit that bucket handle tears could be traumatic in nature. He did agree that squatting is a maneuver that would be competent of causing a bucket handle tear. Now there is no doubt there has been no evidence that was presented that either proved or from which it could be inferred that petitioner had any right knee issue predating the accident of August 29th of 2009 and there has been no evidence presented that there was an intervening accident or a subsequent accident that took place from August 29 2009 the first accident in question to the second accident of September 13th of 2013 at a different employer that is in question. So there's nothing no evidence presented to show something happened in between. Dr. Worma the other independent medical examiner he looked at the MRI films he was presented with all of the medical records. He indicated that bucket handle tears are always traumatic in nature which is unlike what Dr. Lieber indicated. He indicated that Dr. Worma indicated that the bucket handle tear the petitioner has based on the findings of the MRI was a bucket handle tear that was traumatically caused. Now he couldn't really pinpoint when it was caused but he did say it was caused predating the MRI because that is what he relied on in reviewing and making his opinion that this bucket handle tear was traumatic in nature. Now Dr. Rohde who was petitioner's treating physician he was a physician who actually offered a very thorough explanation as to what had happened in this case and the explanation that he provided was he indicated look the medical records support this particular individual has a traumatic event and it is a kind of traumatic event that would be competent for producing a bucket handle tear. Can we move on Ms. Sohail can we move on to the commission's findings and your objections or concerns the commission's findings because you're running out of time. Sure your honor your honor the the gist is that the there is there has been no intervening accident petitioner was involved in a pretty traumatic accident as supported by the findings of the physician's immediate care. He had an accident there is nothing in between that happened till he started receiving treatment. When he received treatment it came very apparent with Dr. Rohde's deposition and his opinion that look what happened here was he had a traumatic accident however his knee went untreated for so long that the bucket handle tear the traumatic bucket handle tear that he sustained went from being displaced to reduced and when someone has a reduced bucket handle tear which is a state where bucket handle tears need to be you are not going to have as much symptomatology as you would have if it's displaced because it is now in their native possession. So I think the commission largely ignored testimony of Dr. Rohde who indicated and explained unlike Dr. Lieber as to why this patient was able to go two years or two years and 11 months without seeking treatment or without you know receiving any active treatment and still being able to carry on with his regular life duties. I think all commission focused on two years 11 months that's it. It can't be compensable and I think that is certainly against the manifest rate of the evidence based on the fact that you have consistent medical history. You have opinions both of Dr. Lieber and Dr. Verma who agree that this is the kind of accident competent from producing a bucket handle tear. Based on that I see my time is up your honors. I would request that the commission decision be reversed as it is against the manifest rate of the evidence. Okay you'll have two minutes or you'll have five minutes in reply. Thank you Ms. Sohail. As I understand it Mr. Delaney you wish to have 10 minutes in response correct? I'm not sure I need 10 minutes your honor but yes I would like to respond Bill Delaney for the appellee five-star fitness. Council was talking about an August 2009 accident addressing the justice's question. Noteworthy is that in appellant's brief there was really no mention of the facts relied on by the commission to reach their decision and it's a tough standard for the for the appellant at this point as I know the justices are familiar with. Getting over a manifest weight on a causal connection opinion from the commission is a big big hurdle and in this particular case it's a hurdle that the appellant has not been able to overcome and what the appellant's argument in both her brief and today is essentially an argument that would be made at the commission. Here are the facts I view the facts this way you should rule in my favor. Well does this boil down to just the difference of opinion between Rody and Lieber? That is what the commission stated and that is my belief and that is how they came to their opinion. It's a medical dispute it's a factual determination. The commissioners are expert were viewed as expert in medical determinations. Okay Mr. Delaney let me cut in there if that's the case and the commission accepted Dr. Lieber's explanation is there sufficient evidence in the record to support Dr. Lieber's findings? Yes sir. Are you arguing to us? Well in in this case the commission stated in their decision that they were persuaded by Dr. Lieber's opinion that the mechanism of injury was not sufficient to cause this large tear that was found in an MRI two years and 11 months later. Further Dr. Lieber was of the opinion that given the the claimant's ability to function and they it's supported by the record he was able to return in a few weeks to to his work. He was doing strenuous what they described as and this is supported in the record strenuous workouts with the knee with it with his entire physical regimen. He was essentially able to function in a manner that was supported by the record inconsistent with the tear that Dr. Rohde is relying on to argue that it's all related to the accident almost three years earlier and it should be pointed out and I did in my brief that there's this notion and council brought it up there's a reduced tear or if the tear is reduced then you can function if the tear is displaced well then you can't function and I think the tear was reduced. However the doctor's testimony this is Dr. Rohde now his testimony is based on an MRI finding and his testimony was made or tendered before he did the surgery. We all know and this is not in the record but we all know MRIs can be you know they're not exactly definitive on every on every issue but when you go into the knee which Dr. Rohde did in July of 14 that would be the time okay yeah I see the tear he says it's a complex tear and if you look at the operative reports it's a complex tear he doesn't say whether it was reduced he doesn't say whether it was displaced therefore it's left to the trier of fact to speculate as to well was it reduced or wasn't displaced. Dr. Lieber says based on the testimony of the petitioner or based on his version of events based on the tear based on his activity thereafter and the length of time between when the accident occurs and when he underwent the MRI that it's just it just doesn't add up and I think the commission's decision is well well-founded. Now could could a different effect disagree? Yeah they could and then the arbitrator did in this case however at this point in time you've got a unanimous commission decision that's the employer employee and neutral all saying no we view this two-year 11-month gap under the circumstances of this case as troublesome and as and not and the reason or one of the reasons for why they found against the petitioner so I think the court's hands are tied in this case I think that there's sufficient evidence to support the commission's decision as an opposite conclusion clearly apparent no is is the could no rational trier of fact agree with the condition with the commission no is there a reasonable factual reasonable factual basis for the commission's decision yes so I think given those circumstances appellant cannot overcome the manifest weight of and I think if I were to summarize your your position here is Dr. Rohde gives an explanation as to why or the claimant could function for two years having sustained the injury correct Dr. Rohde states in his testimony that if the tear was reduced then he may be able to function without so he gave an explanation as to how he could function for two years correct he gave an explanation based on evidence from the MRI which was not which was viewed performed I'm going to interrupt you then he performed the surgery am I correct yes he did and when and and did he perform the surgery before or after he testified after he testified okay and there's nothing in his surgical notes thereafter that address the issue of what the nature of the tear was the degree and extent whether it was reduced or displaced right that is correct and so that undermines to some reasonable degree you're saying the significance of his opinion I'm sorry that reduces the significance of his opinion the weight to his opinion because oh absolutely absolutely that's your position is what you're saying right it's one of my positions what's your other position well that that that there was sufficient evidence supporting the commission's decision that's not against the manifest weight and Dr. Lieber's opinions were well you're you got Lieber Lieber's your guy Lieber says you know it's not possible that this person could function for two years without excruciating pain and do all the things he said he could do it was the nature if it was a tear right like that I don't think he said that he couldn't it wasn't that extreme he said that he he would he said what he's what he testified to at least my interpretation of it was that if the claimant had sustained the type of tear that was found on the MRI he would not have been able to function to the degree he functioned in the in the ensuing two years and 11 months okay okay okay Fergus you have anything further Mr. Delaney no your honor unless there's other questions I don't hear any so thank you thank you your honor Mr. Busey is it yes your honor uh Craig Busey for the Appalachian Clubs of River City I'll keep my I think the brief kind of speaks for itself petitioner's own treating surgeon testified that his knee condition and the meniscal tear involved therein occurred prior to Mr. Dallefeld ever working for my client he further testified that the knee condition was not aggravated in any way by any alleged accident for my client the only evidence presented at trial that Mr. Dallefeld even was involved in a work accident while working for my client was his own testimony and some form 45s that he filled out himself and then sent to his attorney which were never signed off or presented to my insured we had Lizzie Robinson the HR manager for the insured Mr's testimony long story short I think there's more than sufficient evidence in the record to support a finding that there was no accident or accidents plural excuse me while Mr. Dallefeld worked for my client Clubs of River City okay anything further Mr. Busey nothing further your honor okay well thank you uh uh miss uh Sohail uh you may reply thank you your honor just very briefly to uh Mr. Busey's argument your honor even we did appeal the issue of the accident even if you reverse it or affirm it it doesn't really wouldn't change the outcome because we do agree that based on the testimony of the treating physician the knee condition was related to the first accident everything is caused by the uh accident that transpired at star fitness there is evidence of some temporary aggravation but not changing the anatomy of his knee not changing the treatment course or requiring any further treatment in terms of what counsel Delaney had indicated I don't disagree your honor that manifest rate is a tough standard it really is but you have to look at the totality of the evidence while you are to Dr. Rode versus Dr. Lieber I think it boils down to petitioner's testimony it boils down to all of the medical records that are presented it boils down to Dr. Lieber testimony Dr. Wormoth testimony and Dr. Rode's testimony I don't believe that Dr. Lieber at all clarified or discussed any difference between reduced versus a displaced ear which is one of the main arguments we are making because it does rebut his testimony that the petitioner could not have you know had a tear and could have functioned which by the way Dr. Lieber didn't even believe he indicated he testified he said I'm not convinced that he had a bucket handle medial meniscus tear which the radiologist says he did Dr. Hoffman says he did Dr. Rode and both Dr. Wormoth said he did Dr. Lieber opinion was based on not even exactly knowing what the diagnosis was because he wasn't sure I think if you look at the evidence in its totality you will see that there's well first of all petitioner by the way which as arbitrator pointed out the only person who heard the petitioner testify that he presented credible testimony he testified to a specific incident there are some serious findings noted in the initial ER and there's nothing in between no other intervening accident that he was involved in I think Dr. Rode's opinion Dr. Wormoth's opinion and to some extent Dr. Lieber's opinion as to what can cause a bucket handle tear is credible and if you look at that then the commission denial on medical causation is against the manifesto of the evidence and based on that we would request that you reverse the commission's opinion and remand this case okay very good thank you counsel all for your arguments in this matter